UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X

ROY HOWARD, JERYL ABRAMSON and YRP, LLC,:

                        Plaintiffs,   :

          - against -        :

THE TOWN OF BETHEL, et al.,       :

                   Defendants.   :

- - - - - - - - - - - - - - - - - - - - X

**ECF CASE**

06 Civ. 0032 (WCC)

**OPINION
AND ORDER**

**A P P E A R A N C E S :**

                     LAW OFFICE OF RUSSELL A. SCHINDLER
                     **Attorneys for Plaintiffs**
                     245 Wall Street
                     Kingston, New York 12401

RUSSELL A. SCHINDLER, ESQ.

        Of Counsel

                     DRAKE, LOEB, HELLER, KENNEDY,
                       GOGERTY, GABA & RODD, PLLC
                     **Attorneys for all Town of Bethel
                       Defendants**
                     555 Hudson Valley Avenue, Suite 100
                     New Windsor, New York  12553

STEPHEN J. GABA, ESQ.

        Of Counsel

                     SULLIVAN COUNTY ATTORNEY
                     **Attorneys for Defendant Daniel
                       Hogue**
                     County Government Center
                     100 North Street
                     Monticello, New York 12701

SAMUEL S. YASGUR, ESQ.
  Sullivan County Attorney

        Of Counsel

                           **Copies E-Mailed to Counsel of Record**

**CONNER, Senior D.J.:**

Plaintiffs Roy Howard, Jeryl Abramson and YRP, LLC ("YRP")[1] bring this action pursuant to 42 U.S.C. § 1983 against defendants the Town of Bethel (the "Town"),[2] the Town of Bethel Planning Board (the "Planning Board"), Herman Bressler, Chairman of the Planning Board, Planning Board members William Brey, Elmer Brucher, Leon Smith, Wilfred Hughson, Timothy Dollard and Bernard Greisberg (collectively, the "Planning Board members"), Victoria Vassmer-Simpson, the Town Supervisor, Town Board members Robert Blaise, Harold Russell, Richard Crumley and Daniel Sturm (collectively, the "Town Board members"), and Daniel Hogue, Sheriff of Sullivan County.[3] Specifically, plaintiffs allege that defendants infringed their rights to freedom of speech, assembly and association, as guaranteed by the First Amendment to the United States Constitution, as well as their Fourteenth Amendment[4] right to due process of law and equal protection of the laws by imposing restrictions on plaintiffs' ability to hold a large public gathering and outdoor camping event commemorating the 1969 Woodstock festival.

In addition to damages and injunctive relief, plaintiffs seek a declaratory judgment that

---

[1] YRP is organized under the laws of New York and is operated by the individual plaintiffs.

[2] The Town is located in the State of New York, County of Sullivan.

[3] We refer to the Town, the Planning Board, the Planning Board members and the Town Board members as the "Town defendants" and all defendants collectively as the "defendants."

[4] Plaintiff's due process claims are purportedly brought pursuant to "the Fifth Amendment of the United States Constitution as made applicable to the States by operation of the Fourteenth Amendment." Although the distinction is largely academic, we note that Fourteenth Amendment's Due Process Clause, not that of the Fifth Amendment, governs conduct by state actors, *see Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"), and tailor our analysis accordingly.

1

certain Town public assembly ordinances are unconstitutional.  The Town defendants now move for summary judgment on all counts, contending that: (1) the *Rooker-Feldman* doctrine and the doctrines of collateral estoppel and *res judicata* bar plaintiffs' First Amendment claims; (2) the doctrine of absolute legislative immunity bars plaintiffs' claims against the Town Board members; (3) the doctrine of qualified immunity bars plaintiff's claims against the Planning Board members; and (4) plaintiffs' First and Fourteenth Amendment claims fail on the merits.  Defendant Hogue moves, pursuant to FED. R. CIV. P. 12(b)(6), to dismiss the Complaint for failure to state a claim upon which relief may be granted.  For the reasons that follow, defendants' motions are granted.

## BACKGROUND

The record reveals the following facts.  Plaintiffs are owners of more than 100 acres of real property located within the County of Sullivan, New York, which is located near the site where the historic 1969 Woodstock music festival took place.[5]  (Complt. ¶¶ 11-12.) The property is located in an area classified under the Town of Bethel Code of Ordinances (the "Town Code") as an agricultural district.  (Town Defs. Rule 56.1 Stmt. ¶ 7.[6]) In 1996, plaintiffs held a three-day outdoor music festival on their property in commemoration of the 1969 Woodstock event.  (*Id.* ¶ 3.) The festival, which included live music and performances, was attended by thousands of people, many

---

[5] Howard is the former sole owner of the property in question.  In 1997, Howard transferred to YRP title of most of the real property at issue, which he used for the purpose of holding festivals and concerts.  Howard subsequently conveyed another interest in the property to Abramson.  The record is unclear as to precisely when Abramson acquired his interest, but it appears that Abramson has been involved in the festival activities since their inception.

[6] Unless otherwise specified, citations to the Town defendants' Rule 56.1 Statement reflect assertions that plaintiffs do not dispute.

2

of whom camped on plaintiffs' property.  (*Id.* ¶ 4.) The Town Code permits such uses of agricultural property upon grant of a special use permit and site plan approval by the Planning Board.  (*Id.* ¶ 8.) Plaintiffs, however, did not obtain a special use permit before holding the event.  (*Id.* ¶ 15.)

The following year, plaintiffs proposed to hold a similar event, but the Town successfully sued them in New York State Supreme Court and obtained a permanent injunction preventing plaintiffs from holding festivals without the land use approvals required by the Town Code.[7]  (*Id.* ¶¶ 18-19.) Notwithstanding the 1998 state court injunction, from 1997 to 2003, plaintiffs have held an event on the property each August, which they have variously denominated a "political rally," "garage sale," or "private party."  (*Id.* ¶ 20.) In December of 2003, plaintiffs applied for a special use permit to hold an event in August 2004.  (*Id.* ¶ 28.) Plaintiffs stated that they would be charging an admission fee and operating concession stands on the property, but did not request permission to allow camping during the event.  (*Id.* ¶ 29.) The Town granted plaintiffs' application on the condition that they prohibit camping and the lighting of open fires.  (*Id.* ¶ 30.) Nevertheless, plaintiffs permitted attendees to camp, as well as light and maintain open fires.  (*Id.* ¶ 34.)

The following year, plaintiffs again sought a permit, this time with a provision for camping. (*Id.* ¶¶ 35-37.)  It was denied due to several incidences of non-compliance with the Town Code, including plaintiffs' failure to pay consultant fees incurred by the Town in evaluating the application on public health, safety and transportation criteria.  (*Id.* ¶¶ 38-41.) Plaintiffs nonetheless held their gathering, but ostensibly did not charge admission.  (*Id.* ¶¶ 42-44.) Rather, they collected "suggested donations" of $35 from those in attendance.  (*Id.*) During the event, plaintiff alleges that Hogue's

---

[7] Plaintiffs objected, arguing, *inter alia*, that the applicable Town Code provisions were unconstitutional.  (*See* Town Defs. Mem. Supp. Summ. J. Ex. 16.)

deputy sheriffs established a roadblock and searched festival attendees, as well as engaged in helicopter flyovers of the property. (Pls. Mem. Opp. Summ. J. at 1-2.) Plaintiffs subsequently filed the present lawsuit.

During the pendency of this litigation, in August 2006, defendants moved, by Order to Show Cause in New York State Supreme Court, to enjoin plaintiff from holding a festival, which was scheduled to begin on August 10, 2006.  (Gaba Reply Decl., Ex. C (transcript of 2006 state court proceeding).) At that proceeding, the court addressed plaintiffs' constitutional arguments at length and held that: (1)  the ordinances in question did not violate the First Amendment; and (2) plaintiffs were bound by the 1998 permanent injunction prohibiting them from holding the festival without first obtaining a permit.  (*See id*.) Accordingly, the court enjoined plaintiffs from holding their event. (*See id.*)

## DISCUSSION

## I.     The Town Defendants' Motion for Summary Judgment

Summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 247-50 (1986).  A fact is material only if, based on that fact, a reasonable jury could find in favor of the nonmoving party.  *Anderson*, 477 U.S. at 248. The burden rests on the movant to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant.[8]  *See Anderson*, 477

---

[8] Unless otherwise indicated, citations to affidavits submitted by defendants reflect information that is uncontested by plaintiff.

4

U.S. at 255.  To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The Court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist.  *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## A.    Plaintiffs' First Amendment Claims Are Barred by Collateral Estoppel

The first count of plaintiffs' Complaint, sounding against the Town, contends that sections 57.2,[9] 57.3[10] and 57.9[11] of the Town Code establish "the outright criminalization of 'sleeping outside'" and are thus overbroad in violation of the First Amendment.  (Pls. Mem. Opp. Mot. Summ. J. at 12.)  Additionally, plaintiffs contend that, in failing to grant them a special use permit, the Planning Board and Planning Board members violated their rights to freedom of speech, association

---

[9] Town Code § 57.2 provides, in pertinent part:
For the purpose of this chapter, the following words, terms and phrases shall have the meaning ascribed to them in this section: CAMPING—The use of a property as a site for sleeping outside, or; the parking of travel trailers or similar equipment, the erection of tents or other shelters, to serve as temporary residences.

[10] Town Code § 57.3 provides, in pertinent part: "No person . . . being the owner, user, operator or occupant of any land within the Town of Bethel, shall use or allow the use of such land for a campground or RV park or any other form of camping regulated herein unless a license has been obtained as herein provided."

[11] Town Code § 57.9 provides, in pertinent part:
Any person . . . who uses any property or allows their property to be used in violation of any provision of this chapter shall be guilty of a misdemeanor and an offense against this chapter and subject to imprisonment or a fine of not less than two-hundred-fifty dollars ($250). When a violation of any of the provisions of this chapter is continuous, each day or portion thereof shall constitute a separate and distinct violation.

and assembly under the First Amendment to the United States Constitution. (Complt. ¶¶ 62-64.) The Town defendants contend that plaintiffs' claims are barred by collateral estoppel, as they were previously litigated in 1998 and 2006. We agree.

As a preliminary matter, we must ascertain whether New York or federal principles of collateral estoppel control our analysis in the present case. As the United States Supreme Court has acknowledged,

> [t]he preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered. "It has long been established that § 1738 does not allow federal courts to employ their own rules of [preclusion] in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481-482 (1982); *see also Allen v. McCurry*, 449 U.S. 90, 96 (1980). Section 1738 embodies concerns of comity and federalism that allow the States to determine, subject to the requirements of the statute and the Due Process Clause, the preclusive effect of judgments in their own courts.

*Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). Accordingly, we apply New York principles of collateral estoppel to the present case.

Under New York law, "[t]he doctrine of collateral estoppel precludes a party from relitigating an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point . . . ." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455-56, 482 N.E.2d 63, 492 N.Y.S.2d 584 (1985) (internal quotation marks omitted; citations omitted). The doctrine serves the two-fold purpose of conserving limited judicial resources and preventing a losing party from getting a second bite at the apple by merely choosing a new forum in which to litigate. *See id*. In order to invoke the doctrine of collateral estoppel, a party must demonstrate that: (1) "the

6

identical issue necessarily [was] decided in the prior action and [is] decisive of the present action";

and (2) "the party to be precluded from relitigating the issue . . . had a full and fair opportunity to

contest the prior determination." *Id*. The burden of demonstrating that the issues in the present case

and the prior litigation are identical rests on the party seeking the benefit of collateral estoppel,

whereas the party seeking to avoid application of the doctrine has the burden of proving that it lacked

a full and fair opportunity to litigate the issue in the prior proceeding. *Id*.

As a preliminary matter, we note that collateral estoppel can be invoked only against a party

to the prior action or one in privity with such a party. *Buechel v. Bain*, 97 N.Y.2d 295, 303-05, 766

N.E.2d 914, 740 N.Y.S.2d 252 (2001). Plaintiffs contend that, because Abramson was not a party

to the prior litigation, the doctrine cannot be applied to the present case. Perhaps unsurprisingly,

plaintiffs do not address the issue of privity.

> In the context of collateral estoppel, privity does not have a single well-defined
> meaning . . . . Rather, privity is an amorphous concept not easy of application . . .
> and includes those who are successors to a property interest, those who control an
> action although not formal parties to it, those whose interests are represented by a
> party to the action, and [those who are] coparties to a prior action. . . .

*Id*. at 304 (internal quotation marks omitted; citations omitted). In the present case, our privity

inquiry is not a difficult one, as it is undisputed that Howard and YRP were parties in the 1998 action

and that Abramson acquired title to the subject property from Howard. Accordingly, we conclude

that, as a successor to his property interest, Abramson is in privity with Howard and is subject to

collateral estoppel in the same manner as his grantor.[12] *See id*.

Turning to the first element, we note that in order for an issue to satisfy the identity

---

[12] Although Abramson was not a party in the 1998 or 2006 state court proceedings, as a
consequence of our holding that he was in privity with Howard and for the sake of consistency, we
refer to Howard, YRP and Abramson collectively as "plaintiffs."

requirement, it must have been actually litigated and necessarily decided in the prior proceeding. *D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 666-67, 564 N.E.2d 634, 563 N.Y.S.2d 24 (1990).  In order to have been actually litigated, the issue "'must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding.'" *Evans v. Ottimo*, 469 F.3d 278, 282 (2d Cir. 2006) (quoting *D'Arata*, 76 N.Y.2d at 667).  In the present case, the validity of the ordinances at issue was necessarily adjudicated implicitly at the 1998 proceeding and explicitly at the 2006 preliminary injunction hearing.

In the 1998 proceeding, plaintiffs argued as an affirmative defense that "the Zoning Code of the Town of Bethel and Town of Bethel Uniform Fire Prevention and Building Code Enforcement Law are unconstitutional, invalid, illegal, and unenforceable." (*See* Town Defs. Mem. Supp. Summ. J., Ex. 16.) Notwithstanding this argument, the state court issued an injunction enjoining plaintiffs from non-compliance with the very provisions they claimed violated the constitution.  Plainly, the court's issuance of the injunction included an implicit and necessary rejection of plaintiffs' constitutional argument.

Moreover, even assuming, *arguendo*, that the constitutionality of the ordinances in question was not actually litigated at that 1998 proceeding, it was specifically addressed by the New York Supreme Court during the 2006 injunction proceeding.  At that proceeding, the court specifically held:

> With respect to the issues raised by [plaintiffs] as to the constitutionality [of the applicable regulations], it is well recognized that municipalities have considerable authority to implement zoning plans and programs to insure the health and safety of their residents. [*See, e.g., Stringfellow's of N.Y., Ltd. v. City of N.Y.*, 91 N.Y.2d 382, 694 N.E.2d 407, 671 N.Y.S.2d 406 (1998).] The court is well aware of the impact that the 1969 Woodstock festival had upon both attendees and the Sullivan County residents[, p]articularly those residing in the immediate vicinity.  While subsequent events held on the site have not attracted the numbers originally in attendance[,] they

8

> have evoked such interest as to attract hundreds, if not thousands, to this commemorative event.
>
> Accordingly, the court finds it is neither unreasonable [n]or unconstitutional for the Town of Bethel to require permits for such gatherings[, i]n light of the potential safety and health hazards such may engender.  Notably, the court does not agree with [plaintiffs] that the definition of camping is so broad as to be unconstitutional given it[s] underlying intent.  Simply stated, the town has a right to ensure that events of this magnitude are well regulated and conducted[, p]articularly with respect to traffic issues and health and safety of the attendees in terms of sources of food and water, sanitary conditions, and habitable space, and toilet facilities.

(*See* Gaba Reply Decl., Ex. C (transcript of 2006 state court proceeding).) In light of the foregoing, we conclude that the matter was actually litigated and necessarily decided in the 2006 proceeding. The first element is therefore satisfied.

The second element, namely whether the party against whom preclusion is sought had a full and fair opportunity to contest the prior determination, is also satisfied.  Plaintiffs, in attempted support of their burden of proof, *see Kaufman*, 65 N.Y.2d at 456, argue that they were not afforded a full and fair opportunity to litigate the matter in 1998 because "[n]othing in the record indicates that the State Court . . . ever passed on the claimed constitutional infirmities."  (Pls. Mem. Opp. Summ. J. at 9.) Plaintiffs do not address the 2006 preliminary injunction hearing.  As the 2006 state court's ruling demonstrates, plaintiffs actually presented their arguments to a trial court of general jurisdiction, which issued a formal ruling.  Although the state court's opinion was brief due to the emergency nature of the proceeding,[13] it provided plaintiffs with a clearly articulated ruling that was appealable as of right under N.Y. C.P.L.R. § 5701.[14]  *See Singer v. Dep't of Fin. of City of N.Y.*, 191

---

[13] The court issued the preliminary injunction one day before plaintiffs' proposed event was scheduled to occur.  (*See* Gaba Reply Decl., Ex. C (transcript of 2006 state court proceeding).)

[14] N.Y. C.P.L.R. § 5701 provides, in pertinent part:
An appeal may be taken to the appellate division as of right in an action, originating in the supreme court or a county court:

A.D.2d 320, 321, 594 N.Y.S.2d 774 (1st Dep't 1993) ("[T]he order appealed decided a motion made upon notice and imposed a preliminary injunction; therefore it presents an appealable issue for this Court [pursuant to N.Y. C.P.L.R. 5701].").  Plaintiff has made no indication that it filed a notice of appeal from the 2006 state court decision and this Court's independent search has discovered none.

Additionally, we note that although not a full-blown trial on the merits, hearings on preliminary injunction hearings are routinely afforded issue preclusive effect if they meet the requirements for application of the collateral estoppel.  *See, e.g., Seven Acre Wood St. Assocs., Inc. v. Town of Bedford*, 302 A.D.2d 511, 512, 755 N.Y.S.2d 257 (2d Dep't 2003) ("[P]laintiff was collaterally estopped from relitigating the issue of the installation of two culverts by the defendant . . . since this issue was litigated previously in an action . . . in the Supreme Court, . . . wherein a motion for a preliminary injunction involving the same culverts was denied, and the plaintiff had a full and fair opportunity to contest the prior determination."); *cf. Jeffreys v. Griffin*, 1 N.Y.3d 34,

---

1. from any final or interlocutory judgment except one entered subsequent to an order of the appellate division which disposes of all the issues in the action; or

2. from an order not specified in subdivision (b), where the motion it decided was made upon notice and it:
   (i) grants, refuses, continues or modifies a provisional remedy; or
  (ii) settles, grants or refuses an application to resettle a transcript or statement on appeal; or
  (iii) grants or refuses a new trial; except where specific questions of fact arising upon the issues in an action triable by the court have been tried by a jury, pursuant to an order for that purpose, and the order grants or refuses a new trial upon the merits; or
  (iv) involves some part of the merits; or
  (v) affects a substantial right; or
  (vi) in effect determines the action and prevents a judgment from which an appeal might be taken; or
  (vii) determines a statutory provision of the state to be unconstitutional, and the determination appears from the reasons given for the decision or is necessarily implied in the decision . . . .

41-42, 801 N.E.2d 404, 769 N.Y.S.2d 184 (2003) (stating that even administrative proceedings give rise to issue preclusion if they are "quasi-judicial in the general sense required for application of the doctrine of collateral estoppel") (internal quotation marks omitted).

Plaintiffs have, on two occasions in the last several years, become embroiled in litigation against the Town over the precise issue they now bring before this Court, namely whether the Town's ordinance structure and refusal to grant them a special use permit violate the First Amendment.  Having twice been defeated on those claims in courts of competent jurisdiction, plaintiffs are now estopped from pursuing them here.[15]  Accordingly, plaintiffs' First Amendment claims, asserted in counts one, two, six and seven of their Complaint, are dismissed.

**B.**    **The Town's Imposition of Consultant Fees Does Not Offend Due Process**

Plaintiffs next contend that the Town's practice of imposing consultant fees[16] in connection

---

[15] One of the provisions at issue, namely Town Code § 130-06A, which authorizes the assessment of consultant fees, was passed in 2004, six years after the 1998 state court litigation. Nonetheless, plaintiffs' First Amendment challenge to its validity is collaterally estopped as a consequence of the 2006 state court proceedings.

[16] Town Code § 130-06A authorizes the Town, in connection with a permit application, to retain engineering, legal, planning and other expert consulting services and clerical costs for (1) assistance related to the review and processing of applications coming before said bodies and the Town Building Department and (2) the monitoring and inspection of construction of projects by the Building Inspector for projects approved by said Planning Board and/or Zoning Board of Appeals. . . .

Payment for the services of any expert consultant is to be made from funds deposited by the applicant with the Town Supervisor to be placed in an escrow account established for that purpose.  The Building Inspector, as agent for the Planning Board and/or Zoning Board of Appeals, shall confer with the applicant and compute the amount of the escrow to be posted with the Town.  Said amount shall be reasonably related to the costs attendant to the Town's review and processing of the application and/or the monitoring or inspecting of the construction of the project. The Town shall engage any expert at a reasonable rate that is no greater than that

with evaluating their application for a special use permit, violates their Fourteenth Amendment right
to procedural due process of law.[17]   An examination of plaintiffs' exhibits reveals that the Town
attempted to collect consultant fees in the amount of $1,243.90, but plaintiffs' Memorandum of Law
contains only the following argument in support of their procedural due process claim:

> Although the law of the State of New York may authorize charging consultant's fees,
> it is alleged herein that [defendants] failed to follow their own procedures with
> respect to having the Building Inspector "confer with the applicant" for the purpose
> of computing the amount to be placed in escrow.  This is the basis for the Fifth
> Amendment/Fourteenth Amendment due process claim set forth in the Third Cause
> of Action.
>           As such, the mere fact that State law authorizes the Town of Bethel to collect
> such fees ignores the gravamen of the Plaintiffs' cause of action.  Thus, the motion
> for summary judgment in this regard should be denied.

(Pls. Mem. Opp. Summ. J. at 13.)

Plaintiffs statement that state law permits the imposition of fees is confirmed by the New
York Court of Appeals' decision in *Suffolk County Builders Association, Inc. v. County of Suffolk*,
46 N.Y.2d 613, 619, 389 N.E.2d 133, 415 N.Y.S.2d 821 (1979), in which it held that "[t]he power
to regulate subsumes the concomitant power to license and to set fees reasonably related to the cost
of licensing . . . .  For, without the power to do so, a local governmental agency might well find itself
without the means to fulfill its statutory imperative." (citations omitted).  Of course, as the *Suffolk
County Builders* court recognized, "[t]hus the power to enact fees . . . must be regarded as
circumscribed by a similarly implied limitation that the fees charged be reasonably necessary to the
accomplishment of the regulatory program . . . ."  *Id.*  Plaintiffs challenge, however, not the

---

customarily charged by said expert and in no event at a rate greater than that paid by
the Town to said expert for similar work. . . .

[17] As stated previously, *see supra* note 4, the Due Process Clause of the Fourteenth
Amendment, not that of the Fifth Amendment, governs conduct by state actors.

reasonableness of the fee, but the Town's purported failure to "follow its own procedures" and consult with plaintiffs as to the fee's precise amount.

"A two-prong test applies to analyze procedural due process claims. First, the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution. Second, if a protected interest is identified, a court must then consider whether the government deprived the plaintiff of that interest without due process." *Henderson v. New York*, 423 F. Supp. 2d 129, 145 (S.D.N.Y. 2006) (internal quotations omitted). The procedural component of the Due Process Clause of the Fourteenth Amendment protects an individual's property interests. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* The Constitution does not create property interests, "[r]ather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . . " *Id.*

Assuming, *arguendo*, that plaintiffs have a protected property interest in being permitted to hold their festival without the imposition of a licensing and consultant fee, their claim still must fail, as they were provided ample process in connection with the fee's imposition. Specifically, plaintiffs appeared before the Planning Board or an affiliated body at least *seven* times in connection with their permit application and exchanged numerous letter correspondences with the Planning Board. At one such meeting, the issue of plaintiffs' failure to pay consultant fees was specifically addressed, yet plaintiffs failed to comment on the matter. (*See* Town Defs. Mem. Supp. Summ. J., Ex. 62.) Moreover, plaintiffs were afforded the opportunity to independently audit the fees sought to be

13

imposed.  *See* Town Code § 130-06A(E) ("Any applicant may request to inspect said invoices and vouchers submitted by any expert retained by the Town.").  This they also failed to do.

The failure of the Planning Board to follow its own regulations by not "confer[ring] with the applicant," does not rise to the level of a due process violation, particularly in light of the fact that plaintiffs had the opportunity to audit the fees and verbally address them with the Planning Board. *See United States v. Caceres*, 440 U.S. 741, 749-57 (1979) (holding that IRS's violation of its internal regulations did not give rise to actionable claims pursuant to § 1983 in the absence of an underlying constitutional claim).  Due process of law does not amount to process of plaintiffs' choosing.

Indeed, any failure to confer further with plaintiffs is likely due to their antagonistic approach to the regulatory process and immature and unprofessional behavior at hearings before the Planning Board.  (*See, e.g.,* Town Defs. Mem. Supp. Summ. J., Ex. 21 (affidavit of Town Building Inspector noting plaintiffs' failure to address logistical and public safety shortcomings as well as imprecise nature of plaintiffs' proposed 1998 site plan); Town Defs. Mem. Supp. Summ. J., Ex. 41 (memorandum from Planning Board to plaintiffs detailing their failure to comply with conditions of 2004 special use permit); Town Defs. Mem. Supp. Summ. J., Ex. 56 (memorandum from Planning Board consultant indicating that plaintiffs' 2005 site plan was "woefully inadequate" and "lack[ing] the most essential data" to determine whether the subject property could support a large-scale campground); Town Defs. Mem. Supp. Summ. J., Ex. 62 (transcript of public Planning Board hearing at which Howard became irate and stated, with regard to the proposed festival: "We are going to have a fire with people playing drums and masturbating.  That is for sure, we won't have that.").)  Accordingly, we conclude that, under the circumstances, due process required no further

conference with plaintiffs.  Count three of plaintiffs' complaint is therefore dismissed.

C.     **The Town's Denial of Plaintiffs' Request for a Special Use Permit Did Not Violate the Equal Protection Clause**

Plaintiffs next contend that the actions of the Town, the Planning Board and Town Board member Russell in connection with their application for a special use permit constituted disparate treatment in violation of the Fourteenth Amendment's Equal Protection Clause. (*See* Complt. ¶¶ 76-77.) Specifically, plaintiffs claim that other entities within the Town were not charged consultant fees or required to obtain permit approval before advertising for their events.

In order to state a "class-of-one" claim, a plaintiff must show that he "has been treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Chestnut Ridge Assocs., LLC v. Vill. of Chestnut Ridge*, 194 F. App'x 76, 77 (2d Cir. 2006); *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005).  In order to succeed on this claim, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." *Neilson*, 409 F.3d at 104 (citing *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)). Indeed, the similarity between the plaintiff and the alleged similarly situated individuals must be "*prima face* identical." *Neilson*, 409 F.3d at 105, 106 ("Where a plaintiff in a class of one equal protection case relies on similarity alone, a more stringent standard must be applied than is applied in a racial discrimination case."); *see also Baum v. Rockland County*, 161 F. App'x 62, 65 (2d Cir. 2005) ("For such a claim to meet with success, 'the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high' . . . .").  To this end, the

15

plaintiff must demonstrate that: "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Neilson*, 409 F.3d at 105; *see also Williams v. Wright*, 162 F. App'x 69, 70 (2d Cir. 2006).

Plaintiffs fail, as a matter of law, to meet this standard. Plaintiffs cite three entities that were accorded treatment differing from their own, but in no instance do they adduce *any* evidence of their similarity with the proffered organizations. The first proffered entity is the Town of Bethel Local Development Corporation (the "BLDC"),[18] a not-for-profit charitable corporation that, *inter alia*, promotes public performances and cultural festivals throughout the Town. The second, although not specifically named, is the entity that holds concerts at the Bethel Woods facility, a concert hall seated on the site of the original Woodstock festival. (Howard Aff. ¶ 33.) The third is simply identified as "Zoot."[19]

Plaintiffs cannot demonstrate their similarity to any of the aforementioned entities. Despite their characterization of the fee for admission to their most recent event as a "voluntary donation," plaintiffs' statements to the Planning Board belie their actual motives. At the November 9, 2004 Planning Board meeting, plaintiff Abramson specifically stated: "Whatever that might be gentlemen this is the best that I can do. [The ordinances] are there for a reason and we will comply to the best

---

[18] Plaintiffs contend, in their Complaint, that the BLDC is generally exempted from permitting sections of the Town Code. (*See* Complt. ¶¶ 40-43.)

[19] Plaintiffs' sole reference to "Zoot" appears in Howard's Affidavit in Opposition to Summary Judgment, which states: "Plaintiffs believe that [a consultant] conducted a site visit and provided consultant's services to 'Zoot's'" application for a permit to conduct an outdoor concert, and no consultant fee was charged." (Howard Aff. ¶ 32.)

of our ability. *We are operating a business and we have to make money . . . .*" (Town Defs. Mem. Supp. Summ. J., Ex. 40 (emphasis added).)

Indeed, plaintiffs advertised that the price of admission to their event was $35 per person as late as August 2, 2005. Plainly, the BLDC, which operates as a non-profit corporation, can reasonably be distinguished from a revenue-generating venture. Indeed, non-profit organizations are routinely afforded tax exemption, *see* 26 U.S.C. § 501, and their officers and directors are afforded limited liability for their official actions. *See* N.Y. C.L.S. Non-Profit-Corp. Law § 720-a. Clearly, the waiver of consultant fees and exemption from permitting requirements may rationally be applied preferentially to non-profit organizations established for the benefit of the public. With regard to the requirement of obtaining Planning Board approval before advertising, we note that this requirement was *particularly* appropriate in the case of plaintiffs, considering their history of failure to conform to Town Code regulatory health and safety requirements, which on two occasions have justified the issuance of state court injunctions.

The question of the Bethel Woods organization appears, at first glance, to be a closer one. Plaintiffs, however, have provided the Court with absolutely no information permitting comparison with themselves, despite the fact that they have had more than a year to conduct discovery. Similarly, this Court cannot seriously entertain plaintiffs' allegation that a person or entity identified only as "Zoot" is sufficiently identical to them to sustain a class of one equal protection claim. Under the circumstances, we conclude that plaintiffs have failed to meet their burden of demonstrating that they are "'*prima facie* identical in all relevant respects,'" *Neilson*, 409 F.3d at 104, to either the Bethel Woods organization or "Zoot." Plaintiffs' equal protection claim, as embodied in count five of their Complaint, is therefore dismissed.

II.     **Defendant Hogue's Motion to Dismiss**

We now turn to defendant Hogue's motion to dismiss count four of plaintiffs' Complaint

pursuant to FED. R. CIV. P. 12(b)(6).  Our standard for ruling on a motion to dismiss is well-

established.  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept

all of the well-pleaded facts as true and consider those facts in the light most favorable to plaintiff.

*See Scheuer v. Rhodes*, 416 U.S. 232, 236-37 (1974).  On such a motion, the issue is "whether the

claimant is entitled to offer evidence to support the claims." *Id.* at 236.  A complaint should not be

dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to relief." *Padavan v. United States*, 82

F.3d 23, 26 (2d Cir. 1996) (quoting *Hughes v. Rowe*, 449 U.S. 5, 10 (1980)).

In the present case, defendant Hogue has supplied an affidavit containing a recitation of what

he considers the pertinent facts.  Although, in assessing the legal sufficiency of a claim, the Court

may consider those facts alleged in documents that are "integral" to plaintiff's claims, even if not

explicitly incorporated by reference, *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46-48

(2d Cir. 1991); *Smart v. Goord*, 441 F. Supp. 2d 631, 637 (S.D.N.Y. 2006) ("'[W]hile courts

generally do not consider matters outside the pleadings, they may consider documents attached to

the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings

in order to determine if a complaint should survive a 12(b)(6) motion.'"), an affidavit of a defendant

containing a statement of facts contradicting those in the Complaint is not such a document.

Accordingly, we do not consider the statements contained in Hogue's affidavit.

Plaintiffs' claim against Hogue is two-fold, as they allege that, through his deputies, he: (1)

infringed the Fourth Amendment rights of those attending the festival by illegally searching and

seizing their persons; and (2) impermissibly chilled plaintiffs' protected speech by subjecting their guests to a roadblock and helicopter flyovers. (Complt. ¶¶ 73-75.) Hogue, for his part, contends that: (1) plaintiffs lack standing to assert the Fourth Amendment rights of their guests; and (2) the exercise of plaintiffs' First Amendment rights was not chilled as a matter of law. We agree.

We first address plaintiffs' claim that Hogue violated the rights of those in attendance by subjecting them to illegal searches and seizures. In order to prevail on a Fourth Amendment claim, there must be a search and seizure of the claimant's person, house, papers or effects, conducted by an agent of the government, or, as first stated by Justice Harlan, there must be an invasion of the claimant's reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 360-61 (1967) (Harlan, J. concurring). It is well-established, however, that "'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.'" *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978). Accordingly, because plaintiffs attempt to assert their guests' individual Fourth Amendment rights, rather than their own, their Fourth Amendment claim must be dismissed.

We now turn to plaintiffs' claim that the imposition of a police roadblock and helicopter flyovers impermissibly chilled their protected speech and expression. To recover on a claim that government actors, by their words or conduct, chilled one's right to freedom of speech, "plaintiff must prove: (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). Once a plaintiff has satisfied the first two elements, the inquiry becomes whether the government actor's conduct "'can reasonably be interpreted as intimating that some form of

punishment or adverse regulatory action will follow the failure to accede to the official's request. . . .'" *Zieper v. Metzinger*, 392 F. Supp. 2d 516, 525 (S.D.N.Y. 2005) (citations omitted).

Even assuming the existence of the first two elements, plaintiffs' claim still must fail, for they cannot demonstrate that their exercise of free speech was "actually chilled." *See Curley*, 268 F.3d at 73 ("[P]laintiff must show, with respect to the third element, that his First Amendment rights were 'actually chilled.'"). As the *Curley* court succinctly stated: "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Id*. (citing *Singer v. Fulton County Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (plaintiff's speech not chilled where, even after his arrest, he continued to publish his newspaper criticizing village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (plaintiff's speech not chilled where he continued to publish critical editorials even after town brought suit against him).

In the present case, plaintiffs have not alleged that Hogue's conduct affected their expression in any manner whatsoever. Indeed, it is undisputed that the 2005 festival occurred despite the presence of the roadblock and helicopter flyovers. It is also undisputed that the 2006 festival would have occurred but for the issuance of the 2006 state court injunction. Accordingly, plaintiffs' First Amendment claim against Hogue, contained in count four of their Complaint, must be dismissed.


**CONCLUSION**

For all of the foregoing reasons, the motion of defendants the Town of Bethel, the Town of Bethel Planning Board, Herman Bressler, Chairman of the Planning Board, Planning Board members William Brey, Elmer Brucher, Leon Smith, Wilfred Hughson, Timothy Dollard and Bernard Greisberg, Victoria Vassmer-Simpson, the Town Supervisor, and Town Board members Robert

20

Blaise, Harold Russell, Richard Crumley and Daniel Sturm for summary judgment is granted in its

entirety.  Additionally, the motion of defendant Daniel Hogue to dismiss count four of plaintiffs'

complaint is granted in its entirety.  The Clerk's Office is directed to enter judgment in favor of

defendants dismissing the case with prejudice and without costs or attorney's fees.


SO ORDERED.

Dated: White Plains, New York
       March 28, 2007

_William C. Conner_
Sr. United States District Judge